FILED
**United States Court of Appeals**
**UNITED STATES COURT OF APPEALS**    **Tenth Circuit**
**FOR THE TENTH CIRCUIT**
**November 30, 2022**

_____

Christopher M. Wolpert
Clerk of Court

REGINA T. DREXLER,

    Plaintiff - Appellant.

v.

HONORABLE THERESA SPAHN, in her official capacity; HONORABLE CHELSEA MALONE, in her official capacity; DENVER COUNTY COURT, CITY AND COUNTY OF DENVER; PHILLIP WEISER, Attorney General, in his official capacity for the State of Colorado,

    Defendants - Appellees.

No. 21-1368
(D.C. No. 1:21-CV-00805-LTB-GPG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

---

[*] We set this case for oral argument, but Ms. Drexler then moved for submission on the briefs. We granted that motion, so we're deciding the appeal based on the briefs.

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

This appeal grew out of a feud between Regina Drexler and Rachel Brown. The two women had an intimate relationship, which ended bitterly. In the fallout, Ms. Drexler wrote literary essays about abuse. Ms. Brown characterized the essays as harassment and complained that she was being stalked by Ms. Drexler. The feud led to the entry of a protection order in state court,[1] restricting Ms. Drexler's proximity to Ms. Brown, her children, and her houses.

The protection order spurred Ms. Drexler to bring an action in federal court, where she alleged constitutional violations in the protection order as well as the statutes authorizing that order. In this action, Ms. Drexler

- sought habeas relief against two state-court judges and the state court itself and

- sued the state attorney general under 42 U.S.C. § 1983 for prospective relief and damages.

The district court dismissed the entire action, and Ms. Drexler appeals. The appeal involves two main issues:

1. **Jurisdiction for the habeas action against the two state-court judges and the state court.** Habeas corpus is a remedy entitling an individual to release. So habeas jurisdiction exists only when the claimant is *in custody*. Because the typical form of custody is incarceration, most habeas claims are brought by inmates. But even when the claimant is not incarcerated, the

---

[1] The state court issued two protection orders. In 2015, Judge Theresa Spahn issued an oral protection order. Three years later, Judge Chelsea Malone modified the order. Though Ms. Drexler refers to both protection orders, the second order served only to modify the first one.

2

imposition of extraordinary restrictions on freedom can be considered *custody*.

Ms. Drexler complains that the protection order was so restrictive that it effectively constituted *custody*, triggering habeas jurisdiction. The district court disagreed. Ms. Drexler can appeal that determination only if a reasonable jurist could characterize the protection order as the imposition of *custody*. But the protection order simply kept Ms. Drexler away from Ms. Brown, her children, and her houses. No jurist could reasonably regard that restriction as severe enough to constitute *custody*.

2. **Applicability of the *Rooker-Feldman* doctrine in the suit against the state attorney general.** Many times, litigants might feel victimized by a state court's rulings. These litigants sometimes go to federal court to challenge the state-court rulings. But federal courts are not appellate tribunals for state courts because federal and state courts are separate sovereign actors. Because of this dual sovereignty, federal courts have recognized a doctrine—called the *Rooker-Feldman* doctrine—that prevents federal jurisdiction when a litigant challenges a state-court ruling.

In this case, the district court invoked the *Rooker-Feldman* doctrine, treating the entire § 1983 suit as an attack on the protection order. The district court was correct for much of Ms. Drexler's claim. But Ms. Drexler complained about not only the protection order, but also the underlying state statutes authorizing protection orders. The *Rooker-Feldman* doctrine covered Ms. Drexler's challenge to the protection order but not to the underlying statutes. So the district court shouldn't have dismissed the challenges involving the underlying state statutes.

1. **No reasonable jurist could regard the restrictions on Ms. Drexler as *custody*.**

Ms. Drexler wants to appeal the dismissal of her habeas action. But a habeas claimant can appeal only upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).

The district court denied a certificate of appealability, so Ms. Drexler asks us for one. We can grant her a certificate only if she's presented a reasonably debatable argument. *Dulworth v. Evans*, 442 F.3d 1265, 1266 (10th Cir. 2006). Here that argument turns on whether Ms. Drexler was in custody when she sought habeas relief.

Custodial status was required because habeas jurisdiction exists only if the petitioner was "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a).[2] Custody can exist when a state court imposes significant restraints on freedom that are not generally shared by the public. *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009). According to Ms. Drexler, the restraints inhibited her speech and movement.

---

[2] Given the need for custodial status, habeas petitioners like Ms. Drexler must name their custodians as the respondents. 28 U.S.C. § 2242. The custodian is the individual who's able to bring the petitioner to the federal district court. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

When a petitioner isn't incarcerated, the proper respondent is the state attorney general. Rules Governing Section 2254 Cases in the United States District Courts, 1976 advisory comm. note, Rule 2(b)(3). Though Ms. Drexler sued the state attorney general under 42 U.S.C. § 1983, he wasn't named as a respondent in the habeas action. The only named respondents were two state-court judges and the state court, but they were not proper respondents for the habeas action. *See id.* The failure to name the proper custodian may have deprived the court of personal jurisdiction. *See Stanley v. Cal. Sup. Ct.*, 21 F.3d 359, 360 (9th Cir. 1994) ("Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction.").

In invoking her right to speech, Ms. Drexler conflates the terms of the protection order with the state court's reasoning. The protection order itself didn't say anything that would restrict Ms. Drexler's right to speech. Rather than rely on the terms of the protection order, Ms. Drexler relies on the state court's reasoning. For example, Ms. Drexler zooms in on the state court's comments about her fixation with Ms. Brown—not only following Ms. Brown but also writing about her. These comments allegedly inhibit Ms. Drexler from writing more essays out of fear that a state court might view them as harassment.

But a court must consider the effect of the protection order based on its terms, and the terms themselves didn't restrict Ms. Drexler's future writings. In fact, the state district court clarified to Ms. Drexler that "[n]othing in the [protection order] . . . prohibits Ms. Drexler from publishing written materials" or "otherwise intrude[s] on her protected First Amendment [a]ctivities" and the protection order "merely forbids Ms. Drexler from contact with Ms. Brown." Appellant's App'x vol. 2, at 364. That clarification eliminates any conceivable characterization of the protection order as a restriction on Ms. Drexler's speech.

Ms. Drexler also complains about the restrictions on her freedom of movement. The protection order requires Ms. Drexler to stay at least

- 100 yards away from Ms. Brown, her children, and her houses; and

5

- 10 feet away from Ms. Brown when going to or from work.

We must determine whether a reasonable jurist could regard these restrictions as significant constraints on Ms. Drexler's freedom beyond those generally shared by the public. *See Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009); *see also* p. 4, above.

Every year, state courts issue thousands of orders requiring parties to stay away from other individuals. To our knowledge, no court has ever regarded these restrictions on movement as severe enough to constitute *custody*. *See Vega v. Schneiderman*, 861 F.3d 72, 75 (2d Cir. 2017) (concluding that a protection order didn't impose *custody* by requiring the habeas petitioner to stay away from another individual); *Austin v. California*, No. 20-cv-900-CRB, 2020 WL 4039203, at *2–3 (N.D. Cal. July 17, 2020) (unpublished) (holding that a protection order didn't create *custody* by prohibiting the petitioner from returning to his prior residence or being within 100 yards of his son and ex-wife).

State law also sometimes authorizes restrictions on movement. For example, Oklahoma law prohibits convicted sex offenders from living within 2000 feet of a school or childcare center. Okla. Stat. tit. 57, § 590 (2014). We've held that this restriction doesn't constitute *custody* for the

purposes of habeas jurisdiction. *Dickey v. Allbaugh*, 664 F. App'x 690, 692–94 (10th Cir. 2016) (unpublished).[3]

Ms. Drexler complains that her restrictions went even further by preventing attendance at a local university or even her own office. These complaints aren't accurate.

First, she says that she couldn't attend the University of Colorado Denver because Ms. Brown worked there. This statement isn't correct. In fact, the state court told Ms. Drexler that she could freely enroll as a student at the University of Colorado Denver, adding that she just had to avoid Ms. Brown's lectures and keep at least 10 feet away from her. Given this clarification, no reasonable jurist could interpret the protection order as a ban on attending the university.

Second, Ms. Drexler states that the protection order prevented her from going to her own law office. This statement mischaracterizes the protection order. The state court explained to Ms. Drexler that she could go to and from her office, but just had to keep at least 10 feet away from Ms. Brown. Ms. Drexler has not shown that her office was within 10 feet of Ms. Brown.

---

[3] This opinion is persuasive but not precedential. *See* p. 1 n.*, above.

Without support in the case law, no reasonable jurist would treat the protection order as the imposition of *custody*.[4] Given the inability of a court to find *custody*, Ms. Drexler hasn't presented a reasonably debatable challenge to the district court's jurisdictional determination. We thus deny a certificate of appealability.

## 2. The *Rooker-Feldman* doctrine doesn't cover the § 1983 challenge to the constitutionality of the state statutes.

Ms. Drexler not only sought habeas relief but also sued the state attorney general under § 1983, claiming that the protection order and underlying state statutes were unconstitutional. The district court concluded that it lacked jurisdiction over these claims.

On appeal, Ms. Drexler doesn't question the ruling as to the protection order itself. She instead argues that the district court should not have dismissed her constitutional challenge to the state statutes. In considering this argument, we conduct de novo review. *Miller v. Deutsche Bank Nat'l Tr. Co.*, 666 F.3d 1255, 1260 (10th Cir. 2012).

---

[4] Ms. Drexler also alleged that she's been put on the state criminal registry and the national criminal database. But the protection order doesn't address a listing on the state criminal registry or the national criminal database. Granted, deliberate disobedience of the protection order could constitute criminal contempt. *People v. Allen*, 787 P.2d 174, 176 (Colo. App. 1989). But we're not aware of any court that has found custody because of the possibility of contempt for violating a protection order. *Cf. Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) (holding that a threat of future incarceration for failing to register on the sex offender registry does not constitute *custody* for habeas purposes).

In conducting this review, we conclude that the district court erred in applying the *Rooker-Feldman* doctrine. Under this doctrine, federal district courts generally lack jurisdiction to review the correctness of a state-court order. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). But this doctrine doesn't prevent federal jurisdiction over a challenge to the validity of state statutes. *Skinner v. Switzer*, 562 U.S. 521, 531–33 (2011). "[A] state-court decision is not reviewable by lower federal courts, but a statute . . . governing the decision may be challenged in a federal action." *Id.* at 532.

In the complaint, Ms. Drexler challenged the constitutionality of the state statutes underlying the protection order: "The Colorado protection order statutes are substantially overbroad and vague, including C.R.S. §13-14-101 and C.R.S. §13-14-106." Appellant's App'x vol. 1, at 59. Consideration of this challenge could incidentally affect the validity of the protection order itself. But this part of the claim addressed only the constitutionality of the state statutes—not the protection order itself. So this part of the claim falls outside of the *Rooker-Feldman* doctrine. *Skinner*, 562 U.S. at 532.

Because the *Rooker-Feldman* doctrine doesn't apply to this part of the claim, a court must address the merits. The district court didn't consider the merits, and the defendants don't address them. So we remand for the district court to consider the merits of Ms. Drexler's challenge to

9

the state statutes. *See Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1198 (10th Cir. 2010) (stating that the preferred practice is to let the district court decide the issue when it was raised in district court but not yet decided there).

### 3. The district court did not abuse its discretion by denying Ms. Drexler's request to file a reply brief.

Ms. Drexler objected to the magistrate judge's report and recommendation, and the defendants responded. With the benefit of both sides' submissions, the district court ruled on the objections. Before the clerk entered the order on the docket, Ms. Drexler asked for a chance to file a reply brief. The district court declined, and Ms. Drexler challenges that ruling. We reject this challenge.

In considering this challenge, we apply the abuse-of-discretion standard. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). Under this standard, we reverse only if we're definitely and fairly convinced that the district court clearly erred in its judgment or made an impermissible choice. *Id.*

The federal and local rules were silent on reply briefs for objections to a magistrate judge's report.[5] *See Bistryski v. Allbert*, 848 F. App'x 804,

---

[5] Federal Rule of Civil Procedure 72(b)(2) addresses only a party's right to object and the adverse party's right to respond. The rule says nothing about replies.

805 (9th Cir. 2021) (unpublished) ("The district court did not abuse its discretion by considering the magistrate judge's report and recommendation without giving Bistryski an opportunity to reply to defendants' response to his objections because the local rules did not allow for a reply.").[6] And the right to due process didn't entitle Ms. Drexler to file a reply brief. *See NLRB v. Eclipse Lumber Co.*, 199 F.2d 684, 686 (9th Cir. 1952) (statement by the Ninth Circuit that it knew of no due process right to file a reply brief). So the district court had discretion to rule before the filing of a reply brief.

Ms. Drexler relies on Colo. Rev. Stat. § 13-6-311. This statute governs appeals from a county court, not proceedings in federal court. And, as Ms. Drexler acknowledges, the cited statute does not authorize reply briefs. Appellant's App'x vol. 1, at 18–19 ("The statute fails to provide for reply briefs."). The federal district court thus didn't abuse its discretion by declining to allow a reply brief under this Colorado statute.

---

[6] For motions, rather than objections to a magistrate judge's report and recommendation, the district court's local rules generally allow the filing of reply briefs. D. Colo. L. Civ. R. 7.1(d). But these rules also expressly allow judges to decide a motion before the filing of a reply brief. *See id.* ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

11

### 4. The magistrate judge didn't select the district judge assigned to the case.

Ms. Drexler also alleges that the magistrate judge chose which district judge would handle this case. Ms. Drexler is mistaken.

In the District of Colorado, the clerk's office randomly assigns each civil case to a district judge. So when the complaint was filed, the clerk's office randomly assigned U.S. District Judge Babcock to the case.

District courts vary in how they communicate the assignment of the district judge. In this case, the district court communicated the assignment through an order issued by the magistrate judge. His order stated: "Pursuant to D.C.COLO.LCivR 8.1, the Clerk of Court is directed to assign this matter to Senior Judge Lewis T. Babcock." Appellant's App'x vol. 3, at 585. The cited local rule (Rule 8.1) states that the assignment of judges is governed by Local Rule 40.1, and that local rule requires random assignment of judges under a computerized program maintained in the clerk's office. D.C. Colo. L. Civ. R. 8.1(c), 40.1(b).

The clerk's office used this computerized program to assign Judge Babcock to the case. Like many courts, the District of Colorado opted to communicate that assignment through an order issued by the magistrate judge. But the magistrate judge didn't pick Judge Babcock; the computer in the clerk's office did that. The magistrate judge simply communicated that

assignment to the parties. No impropriety existed in the appointment of Judge Babcock.

### 5. The district court couldn't *void* the state-court orders.

Finally, Ms. Drexler argues that the district court should have voided the state-court orders. But Ms. Drexler suggests no plausible basis for concluding that the state courts lacked jurisdiction to enter the protection orders. We thus have no reason to question the district court's refusal to void the state-court orders. *See Nixon v. City & Cnty of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").

### 6. Disposition

We deny a certificate of appealability for the habeas appeal. For the § 1983 claim, we affirm in part, reverse in part, and remand for further proceedings.

                                                Entered for the Court

                                                Robert E. Bacharach
                                                Circuit Judge