**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:21-cv-00805-DDD-KAS

REGINA T. DREXLER,

     Plaintiff,

v.

PHILIP WEISER, in his official capacity as the Attorney General of
    Colorado;
JOHN WALSH, in his official capacity as elected District Attorney for
    the Second Judicial District;
PRESIDING JUDGE IN DENVER DISTRICT COURT DIVISION 414,
    in his/her official capacity;
STATE COURT ADMINISTRATOR, in his/her official capacity;
CHIEF JUDGE OF THE DENVER DISTRICT COURT, in his/her
    official capacity;
PRESIDING JUDGE OF THE DENVER COUNTY COURT, in his/her
    official capacity;
PRESIDING JUDGE IN DENVER COUNTY COURT
    COURTROOM 159, in his/her official capacity;
CHIEF JUDGE AND PRESIDING JUDICIAL OFFICIALS IN THE
    COLORADO COURT OF APPEALS, in their official capacities;
CHIEF JUSTICE OF THE COLORADO SUPREME COURT, in
    his/her official capacity; and
JOHN DOE, in his official capacity with some connection to
    enforcement of the statutes,

     Defendants.

---

## ORDER GRANTING MOTIONS TO DISMISS

---

    Plaintiff Regina T. Drexler alleges that several Colorado statutes are unconstitutionally chilling her desired exercise of her First Amendment rights to engage in free speech and petition the government for redress of grievances. *See* Doc. 118. The defendants move to dismiss Ms. Drexler's claims. Docs. 134, 135, 136, 138. For the following reasons,

- 1 -

the defendants' motions are granted, and Ms. Drexler's Consolidated
Complaint, Doc. 118, is dismissed.

## BACKGROUND

### I.  Procedural History

This case, which was originally filed in March 2021, has a lengthy
and byzantine procedural history. The beginning was explained by the
Tenth Circuit:

> Th[e] [case] grew out of a feud between Regina Drexler
> and Rachel Brown. The two women had an intimate rela-
> tionship, which ended bitterly. In the fallout, Ms. Drexler
> wrote literary essays about abuse. Ms. Brown character-
> ized the essays as harassment and complained that she
> was being stalked by Ms. Drexler. The feud led to the entry
> of a protection order in state court, restricting Ms. Drex-
> ler's proximity to Ms. Brown, her children, and her houses.
>
> The protection order spurred Ms. Drexler to bring [this]
> action in federal court, where she alleged constitutional vi-
> olations in the protection order as well as the statutes au-
> thorizing that order. In this action, Ms. Drexler
> - sought habeas relief against two state-court judges
>   and the state court itself and
> - sued the state attorney general under 42 U.S.C.
>   § 1983 for prospective relief and damages.
>
> The district court dismissed the entire action, and
> Ms. Drexler appeal[ed].

Doc. 50 at 2.

In March 2022, while the case was on appeal, Ms. Drexler filed a sec-
ond case against the Colorado Attorney General, Philip Weiser, and a
third state-court judge. *Drexler v. Weiser*, No. 1:22-cv-00542-DDD-KAS
(D. Colo. filed Mar. 4, 2022). In that case, Ms. Drexler asserted Sec-
tion 1983 claims challenging an award of attorney fees imposed against
her and in favor of Ms. Brown in state court. *See id.*, ECF No. 9.

- 2 -

In November 2022, the Tenth Circuit issued its order and judgment in the appeal of this case. Doc. 50. The Circuit affirmed the dismissal of Ms. Drexler's habeas claim for lack of jurisdiction because the protection order does not place Ms. Drexler "in custody." *Id.* at 2-3. It also affirmed dismissal of Ms. Drexler's Section 1983 challenges to the protection order for lack of jurisdiction under the *Rooker-Feldman* doctrine. *Id.* at 3. But it reversed the dismissal of Ms. Drexler's Section 1983 challenges to the Colorado statutes authorizing protection orders, holding that the *Rooker-Feldman* doctrine does not bar those challenges. *Id.*

On remand, Magistrate Judge Kristen L. Mix set a schedule for the parties to brief the constitutionality of the state statutes at issue.[1] Doc. 56. At that time, the operative complaint asserted (1) facial challenges to state statutes regarding protection orders, attorney-fee awards, and procedures for appeals from county court; and (2) a due-process challenge regarding a Colorado Supreme Court justice's failure to recuse when that Court affirmed the Denver district court's dismissal of her state habeas petition. Doc. 5 at 48-53. Mr. Weiser was the only defendant remaining on remand. *Id.* at 1-2, 48. Pursuant to Judge Mix's order, Ms. Drexler filed an opening merits brief, Doc. 57, but the parties then requested a revised briefing schedule because (1) Mr. Weiser had never answered the complaint or had an opportunity to file Rule 12(b) motions before the case was dismissed originally, and (2) Ms. Drexler expected to file an amended complaint. Doc. 59.

In April 2023, Ms. Drexler filed an amended complaint, in which she (1) added as-applied challenges to the protection-order and fee-award statutes; (2) withdrew her challenge to the appeals statute; (3) added facial and as-applied challenges to the Colorado "emotional distress"

---

[1]    Judge Mix and I were assigned to the case upon issuance of the Tenth Circuit's mandate. Docs. 51, 52, 53.

stalking statute; (4) added a due-process challenge regarding the same attorney-fee award at issue in Case No. 1:22-cv-00542-DDD-KAS; and (5) withdrew her due-process challenge regarding her state habeas case. *Compare* Doc. 5 at 48-53, *with* Doc. 62 at 26-31. Ms. Drexler also added as a defendant "any required John Doe who otherwise may be deemed to enforce the identified state statutes in lieu of Mr. Weiser." Doc. 62 at 1-2, 6. Thereafter, Judge Mix set a revised "[s]imultaneous briefing schedule." Doc. 67.

That briefing schedule was then vacated, again at the parties' joint request, because Ms. Drexler sought to file another amended complaint to address some of the jurisdictional and procedural issues that Mr. Weiser had raised during conferral. Docs. 73, 75. On August 10, 2023, Ms. Drexler filed that amended complaint, in which she (1) added as defendants the District Attorney for Colorado's Second Judicial District[2] and the presiding judges of two Denver county court courtrooms; and (2) withdrew her due-process challenge to the attorney-fee award. Doc. 78. In November 2023, all the defendants filed motions to dismiss that complaint. Docs. 91, 92, 93, 94.

In reviewing those motions to dismiss (which were not fully briefed until January 2024) and the motion to dismiss that had been filed in Case No. 1:22-cv-00542-DDD-KAS, I noted that the allegations and claims in both cases overlapped in significant ways. Doc. 115. In February 2024, I denied the pending motions in both cases without prejudice and directed Magistrate Judge Kathryn A. Starnella to convene a status

---

[2]  Pursuant to Federal Rule of Civil Procedure 25(d), John Walsh has been automatically substituted in place of Beth McCann, as he has succeeded Ms. McCann as the elected District Attorney for the Second Judicial District. Doc. 194.

conference to address whether the cases should be joined or consoli-
dated.[3] *Id.*

At that status conference, Judge Starnella ordered Ms. Drexler "to
file an Amended Complaint in this case that joins all claims from this
case and 22-cv-00542-DDD-KAS." Doc. 117 at 1. Judge Starnella and
the parties had a lengthy discussion regarding who may be the appro-
priate defendants for the claims Ms. Drexler is asserting, Doc. 143
at 12:15-15:5, 18:10-36:11, 48:1-51:12, and Judge Starnella ordered that
Ms. Drexler's consolidated amended complaint "may assert the existing
claims against different people, but no new claims should be added," *id.*
at 15:23-25. Judge Starnella also directed the parties to file an appro-
priate motion to dismiss without prejudice or administratively close
Case No. 1:22-cv-00542-DDD-KAS. Doc. 117 at 1.

On April 23, 2024, Ms. Drexler filed the consolidated amended com-
plaint as ordered by Judge Starnella, which is now the operative com-
plaint. Doc. 118. In that complaint, Ms. Drexler (1) added as defendants
the Colorado State Court Administrator, the Chief Judge of the Denver
District Court, the Presiding Judge of the Denver County Court, the
Chief Judge of the Colorado Court of Appeals, the Colorado Court of Ap-
peals judges who presided over two of her appeals of the underlying
state-court proceedings, and the Chief Justice of the Colorado Supreme
Court; and (2) added, from Case No. 1:22-cv-00542-DDD-KAS, facial
and as-applied challenges to state statutes and procedural rules govern-
ing appeals from district and county courts. *See id.*

---

[3]    Judge Starnella was assigned to this case upon her appointment in
August 2023. Doc. 76.

## II.  Facts and Claims Alleged

Ms. Drexler and Ms. Brown had a decade-long friendship, but Ms. Drexler has not communicated with Ms. Brown since March 2009, when they had a disagreement that ended in "some limited, mutual non-violent physical contact." Doc. 118 ¶ 64. Between 2010 and 2015, Ms. Drexler wrote and published several literary essays. *Id.* ¶¶ 1-6, 67-75. One of those essays, called *Landslide*, was published in 2012; it was based in part on Ms. Drexler's friendship with Ms. Brown but did not mention Ms. Brown by name. *Id.* ¶¶ 2, 68-69; Doc. 118-1. In early 2012, Ms. Drexler performed a public reading at a parent talent show at her sons' primary school; that reading contained no reference to Ms. Brown. Doc. 118 ¶ 4; Docs. 118-3, 120. The public reading was later adapted into an essay called *Stealing Mannequins*, which did mention Ms. Brown by first name only and was published in 2013. Doc. 118 ¶¶ 3-4, 70; Doc. 118-2. A third essay, called *New Realities*, was published "prior to 2015" and "includ[ed] a passing reference" to Ms. Brown but did not refer to her by name. Doc. 118 ¶ 73; Doc. 118-4. Ms. Drexler performed at least five other public readings of her works between 2012 and 2015. Doc. 118 ¶ 75.

In 2015, Ms. Brown sought a civil protection order against Ms. Drexler in Denver county court, "principally based on the allegation that Ms. Drexler had 'published numerous articles about our 'relationship'" and performed her literary work publicly." *Id.* ¶¶ 7, 60. The judge then presiding in Denver County Court Courtroom 159 imposed a protection order "based on her . . . published essays and her . . . 2012 comedic reading." *Id.* ¶¶ 8, 50, 61-63, 76-84; *see also* Doc. 118-5.

Ms. Drexler appealed the protection order to Denver district court, where the case was heard by the judge then presiding in Denver District Court Courtroom 414. Doc. 118 ¶ 52; Doc. 119-3 at 2-42. In the course of

- 6 -

that appeal, Ms. Drexler was not permitted to file a reply brief, which "caused the district court to misapprehend the record facts and misapply the First Amendment, including by finding that the First Amendment did not apply to protect Ms. Drexler's essays and comedic reading because they were relied on by the county court as 'harassment' and to support 'obsession and fixation' under the protection order statutes." Doc. 118 ¶¶ 11, 86. In September 2016, the district court affirmed the protection order, with the exception of the order's restriction on possessing firearms. *Id.* ¶ 87; Doc. 119-4 at 28-34. Ms. Drexler petitioned for review by the Colorado Supreme Court, Doc. 119-3 at 43-65, which was denied, and then the United States Supreme Court, Doc. 119-3 at 66-108, which was denied. Doc. 118 ¶ 89.

After the two-year waiting period required by Colorado statute, in 2018 Ms. Drexler applied for termination of the protection order, and that application was heard in Denver County Court Courtroom 159. *Id.* ¶¶ 90-93. At the hearing on her application, the presiding judge "again focused intensely on and questioned Ms. Drexler extensively about the content of her writings," and "also allowed significant questioning . . . about Ms. Drexler's appellate petitioning seeking relief from the . . . protection order." *Id.* ¶¶ 94-96. The court denied Ms. Drexler's application to terminate the protection order, based on its findings that "the purpose of Drexler's ongoing litigation [was] to harass [Ms. Brown]," and that Ms. Drexler had "stalked" and "followed" Ms. Brown from 2008 to 2015 "based on her literary activities." *Id.* ¶¶ 97-102; Doc. 119-4 at 35-45. The court also increased the location and distance restrictions in the protection order. Doc. 118 ¶¶ 103-04; Doc. 118-6. Ms. Brown filed a motion for attorney fees in the county court pursuant to Colo. Rev. Stat. § 13-17-102, and without holding a hearing or making specific factual findings, the court ordered Ms. Drexler to pay Ms. Brown's fees incurred

from September 2015 through March 2018, totaling over $100,000. Doc. 118 ¶¶ 107-13; Doc. 119-4 at 50.

Ms. Drexler appealed the denial of her application to terminate the protection order and the imposition of attorney fees to Denver district court, where the case was heard in Denver District Court Court-room 414. Doc. 118 ¶¶ 114-15; Doc. 119-5. Ms. Drexler was again not permitted to file a reply brief on appeal. Doc. 119 ¶ 41. The district court affirmed the county court's orders maintaining the protection order and imposing attorney fees, finding that Ms. Drexler's "appeal and petitions for certiorari" were "vexatious" and "constituted the improper use of lit-igation proceedings contemplated in C.R.S. § 13-17-102." Doc. 118 ¶¶ 116-17. Ms. Drexler petitioned for review by the Colorado Supreme Court, which was denied. *Id.* ¶ 118; Doc. 119-6.

In 2020, Ms. Brown filed a motion for attorney fees in the district court pursuant to Colo. Rev. Stat. § 13-17-102, requesting fees incurred since March 2018. Doc. 118 ¶ 119. Without holding a hearing or making specific factual findings, the judge then presiding in Denver District Court Courtroom 414 ordered Ms. Drexler to pay over $85,000 in fees. *Id.* ¶¶ 119-24; Doc. 118-7. Ms. Brown later requested that the court make factual findings, but her request was denied as untimely. Doc. 118 ¶ 126.

Ms. Drexler attempted to appeal the district court's attorney fee award to the Colorado Court of Appeals, but her appeal was dismissed for lack of jurisdiction pursuant to Colo. Rev. Stat. §§13-4-102(1)(f) and 13-6-310, which require that appeals from the district court in cases that were initially appealed from the county court must be made by pe-tition to the Colorado Supreme Court. *Id.* ¶¶ 127-29; Doc. 118-8. Ms. Drexler contends that this dismissal violated Colo. Rev. Stat. § 13-4-110(1)(a), which requires that "[w]hen . . . the court [of appeals]

is of the opinion, that a case before the court of appeals is not properly within the jurisdiction of the court of appeals, the court of appeals shall refer the case to the supreme court," which "shall decide the question of jurisdiction." Doc. 118 ¶ 128. Ms. Drexler then petitioned the Colorado Supreme Court for review of the district court's fee award, but her petition was denied. *Id.* ¶¶ 130-31. She wishes to petition the Colorado Court of Appeals to recall its mandate and have it hear her appeal or make a jurisdictional referral to the Colorado Supreme Court. *Id.* ¶¶ 132-33; Doc. 119 ¶ 55.

In 2021, Ms. Brown filed a second, duplicate motion for attorney fees in the Denver district court pursuant to Colo. Rev. Stat. § 13-17-102. Doc. 118 ¶ 135. Without holding a hearing or making its own factual findings, the judge then presiding in Denver District Court Courtroom 414 adopted Ms. Brown's pleadings as its own findings and ordered Ms. Drexler to pay over $85,000 in fees. *Id.* ¶¶ 136-39; Doc. 118-9. Ms. Drexler again attempted to appeal the district court's attorney fee award to the Colorado Court of Appeals, and her appeal was again dismissed for lack of jurisdiction pursuant to Colo. Rev. Stat. §§13-4-102(1)(f) and 13-6-310, again, she contends, in violation of Colo. Rev. Stat. § 13-4-110(1)(a). Doc. 118 ¶¶ 141-42; Doc. 118-10. Ms. Drexler again petitioned the Colorado Supreme Court for review of the district court's fee award, but her petition was denied. Doc. 118 ¶¶ 145. She wishes to petition the Colorado Court of Appeals to recall its mandate and have it hear her appeal or make a jurisdictional referral to the Colorado Supreme Court. *Id.* ¶¶ 143-44; Doc. 119 ¶ 55.

Ms. Drexler alleges she "has foregone literary and other protected speech since the initial protection order was imposed in 2015." Doc. 118 ¶¶ 19, 150-61. After the protection order was issued in 2015, she withdrew a forthcoming essay from publication due to the risk that it might

be construed as "harassment," "intimidation," or "stalking" under the terms of the protection order. *Id.* ¶¶ 151-53. She stopped writing and submitting literary works for publication altogether, to avoid the possibility that her literary activities could be used to (a) support the issuance of another civil protection order, (b) support the denial of a future application to terminate the existing protection order, (c) support the issuance of another attorney fee award, or (d) subject her to criminal prosecution for violation of the existing protection order or for stalking. *Id.* ¶¶ 152, 157, 160; Doc. 119 ¶¶ 20, 26. She desires to resume writing and publishing literary works and performing readings without fear of further punishment. Doc. 118 ¶ 161; Doc. 119 ¶¶ 21, 27.

Ms. Drexler has also refrained from exercising her right to further petition the state courts for redress. *Id.* ¶¶ 165-73. She fears that doing so could be used to (a) support the denial of a future application to terminate the protection order, (b) support expansion of the existing protection order, (c) support the issuance of another attorney fee award, or (d) subject her to criminal prosecution for violation of the existing protection order or for stalking. *Id.* ¶¶ 165, 172; Doc. 119 ¶ 56. She is now eligible to file another application to terminate the protection order, and she also wishes to seek further relief from the three attorney fee awards imposed against her. Doc. 118 ¶¶ 165-73.

Ms. Drexler asserts that a number of Colorado statutes and a court rule are unconstitutional, either facially or as applied prospectively to the protected First Amendment conduct she wishes to engage in. *Id.* ¶¶ 174-223. She seeks a declaration that those statutes and rule are unconstitutional and an injunction against their enforcement; a declaration that the two attorney fee awards imposed by the Denver district court are void and an injunction against their enforcement; and an award of her attorney fees and costs in this action. *Id.* at 56-57. The

defendants move to dismiss the operative complaint. Docs. 134, 135, 136, 138, 139.

## STANDARDS OF REVIEW

### I.   Rule 12(b)(1): Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction, "mounting either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack challenges the sufficiency of the complaint's factual allegations as to subject-matter jurisdiction, while a factual attack challenges the facts on which subject-matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). When reviewing a facial attack on a complaint, a district court must accept the allegations in the complaint as true. *Id.* at 1002. Factual attacks, however, go "beyond the allegations in the complaint and adduce[] evidence to contest jurisdiction," *Baker*, 979 F.3d at 872, and when reviewing a factual attack, the court "may not presume the truthfulness of the complaint's factual allegations," *Holt*, 46 F.3d at 1003. The court must instead make its own findings as to the relevant jurisdictional facts. *Id.* In doing so, the court has wide discretion to consider affidavits, documents, and other evidence outside the pleadings. *Id.*; *accord Baker*, 979 F.3d at 872. Reliance on such evidence does not necessarily convert the Rule 12(b)(1) motion into one for summary judgment. *Baker*, 979 F.3d at 872.

### II.   Rule 12(b)(6): Failure to State a Claim

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45-46

(1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view them in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* Though a complaint need not contain detailed factual allegations to state a claim for relief, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court typically must not look outside the pleadings when deciding a Rule 12(b)(6) motion, but it may consider documents that the complaint incorporates by reference, that are referred to in the complaint if they are central to the claims and their authenticity is undisputed, or that a court may take judicial notice of. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

## DISCUSSION

Taking the facts as alleged to be true, it is hard not to sympathize with Ms. Drexler. If, indeed, merely writing and telling stories based on a past relationship resulted in a protection order and forgone opportunities to publish or otherwise engage in literary endeavors, that would

- 12 -

be lamentable. But, for the most part, the paths to challenge the specifics of those actions have been driven, without success.

As this Court previously held, and the Tenth Circuit affirmed, the *Rooker-Feldman* doctrine bars review of the correctness of the Colorado courts' orders or whether those courts unconstitutionally applied the challenged state statutes and rules when issuing and extending the protection order, imposing attorney fees, and adjudicating Ms. Drexler's appeals. *See* Doc. 32 at 12-14; Doc. 39; Doc. 50 at 9. All that may be addressed by this Court is whether the challenged statutes and rule are unconstitutional either facially or as applied prospectively to the category of conduct Ms. Drexler wishes to engage in going forward. *See* Doc. 50 at 9 (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.")); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 285-86 (2005) (plaintiffs may contest a state-court rule "so long as [they do] not seek review of the Rule's application in a particular case" (citing *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983))); *Morrison v. Peterson*, 809 F.3d 1059, 1069-70 (9th Cir. 2015) (plaintiff may bring facial challenge or as-applied challenge regarding "a categorical issue not limited to the particulars of [the plaintiff's] situation").

To the extent these avenues remain available after the Tenth Circuit's decision, they are unavailing in the specific context of this case.

## I.   Applicable Law

Before reaching the merits of Ms. Drexler's constitutional challenges, I must first address the defendants' arguments that she lacks standing to bring her claims and that her claims are barred by Eleventh Amendment immunity. *See Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) (subject-matter jurisdiction must exist "in every case and at

every stage of the proceeding"); *In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 594 (10th Cir. 1997) (standing is threshold jurisdictional issue); *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001) (once raised, Eleventh Amendment immunity is threshold jurisdictional issue).

## A. Standing

"Federal courts do not possess a roving commission to publicly opine on every legal question," even ones involving important legal or constitutional matters. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The federal courts' subject-matter jurisdiction is limited, and among the most foundational limitations is that Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies." U.S. Const. art. III, § 2. "[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) ("The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government."). The doctrine of standing ensures that a plaintiff's action qualifies as a case or controversy when it is filed. *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159-60 (10th Cir. 2023).

"[S]tanding is determined at the time the action is brought, and [courts] generally look to when the complaint was first filed, not to subsequent events." *Mink v. Suthers*, 482 F.3d 1244, 1253-54 (10th Cir. 2007) (citation omitted). Standing is assessed as of the time of the original complaint, even if the complaint is later amended. *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013); *accord Rio Grande Found.*, 57 F.4th at 1161. But a court must "examine 'the amended complaint in assessing a plaintiff's claims, including the allegations in support of standing.'" *S. Utah Wilderness Alliance*, 707 F.3d at 1152-53 (quoting *Mink*, 482 F.3d at 1254). When, as in this case, an

amended complaint raises new claims or adds parties that were not present in the original complaint, the time for evaluating standing "is not so clear"; the rule "seems to be that standing is determined at the time the relevant claim is raised or party is joined." *Saleh v. Fed. Bureau of Prisons*, Nos. 05-cv-02467-PAB-KLM, 06-cv-01747-PAB-KLM, 07-cv-00021-PAB-KLM, 2009 WL 3158120, at *5 (D. Colo. Sept. 29, 2009); *accord Prairie Prot. Colo. v. USDA Aphis Wildlife Servs.*, No. 19-cv-2537-WJM-KLM, 2020 WL 3469712, at *8 to *9 (D. Colo. June 25, 2020) ("[S]tanding to bring a claim asserted for the first time in an amended complaint must be judged as of the amended complaint."). Standing is generally evaluated for each claim and as to each defendant, not collectively. *See In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1126 (S.D. Fla. 2019) ("standing is defendant specific" (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006))); *see also Jackson v. Fed. Bureau of Prisons*, No. 4:19-cv-00287, 2019 WL 8752339, at *3 (M.D. Pa. Dec. 9, 2019) (collecting cases).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).

The injury-in-fact requirement may be applied "somewhat more leniently" in the First Amendment context. *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (citing *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)); *see also Mink*, 482 F.3d at 1253, *Winsness v. Yocom*, 433 F.3d 727, 731 (10th Cir. 2006); *Colo. Union of Taxpayers, Inc. v. Griswold*, No. 22-1122, 2023 WL 5426581, at *1 (10th Cir. Aug. 23, 2023). In this context, a plaintiff may show an injury in fact if (a) the plaintiff intends to engage in conduct that would arguably violate the law, and such conduct would give rise to a credible fear of an enforcement action; or (b) the plaintiff is "chilled" from engaging in protected First Amendment conduct, typically speech.[4] *Peck*, 43 F.4th at 1129; *Griswold*, 2023 WL 5426581, at *1. Under the latter theory, the plaintiff must provide (1) evidence that in the past she engaged in the type of speech or conduct affected by the challenged government action; (2) evidence that she has a present desire, though no specific plans, to engage in such speech or conduct; and (3) a plausible claim that she has no intention to engage in such speech or conduct because of a credible threat that the law will be enforced. *Peck*, 43 F.4th at 1129-31. The two tests overlap, "and the analysis will be similar under either." *Id.* at 1129 n.9.

Under either test, the "credible threat" prong is the same and includes a multi-factor analysis. *Griswold*, 2023 WL 5426581, at *3 n.4. The non-exhaustive "credible fear" factors are: (1) whether there is evidence of past enforcement against the same conduct; (2) whether authority to initiate charges is not limited to a prosecutor or an agency

---

[4]    *Peck* addressed free speech, which is only one of the First Amendment rights at issue in this case. The defendants have not argued that *Peck* should not apply as to other protected First Amendment activity such as the right to petition for redress of grievances, and I see no reason not to apply *Peck*'s standard to Ms. Drexler's First Amendment claims as a whole.

and, instead, any person could file a complaint or grievance against the plaintiff; and (3) whether the state disavowed future enforcement. *See id.* at *3 (noting that courts consider "at least" these three factors); *Peck*, 43 F.4th at 1132.

The "threat of prosecution is generally credible where a challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage, and the state has not disavowed any intention of invoking the provision against the plaintiff." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016) (internal quotation marks and alteration omitted). But the "mere presence" on a state's books of a statute a plaintiff believes is unconstitutional does not confer standing to challenge it in the absence of a credible threat of enforcement, even if the plaintiff alleges a chilling effect on constitutionally protected conduct prohibited by the statute. *Winsness*, 433 F.3d at 732. A plaintiff bringing a facial challenge still must show an injury in fact sufficient to satisfy the Article III case-or-controversy requirement, even under the more lenient standards that apply in the First Amendment context. *See Ward*, 321 F.3d at 1267; *D.L.S. v. Utah*, 374 F.3d 971, 975-76 (10th Cir. 2004).

### B. Eleventh Amendment Immunity

The Eleventh Amendment bars citizens from suing states, including their own, in federal court. *See* U.S. Const. amend. XI; *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 827 (10th Cir. 2007). And where, as here, a plaintiff sues state officials in their official capacities, the plaintiff's claims are really claims against the state. *Strepka v. Miller*, 28 F. App'x 823, 828 (10th Cir. 2001); *see also Runkle v. Colorado*, No. 1:22-cv-03252-WJM-SBP, 2023 WL 9799116, at *6 (D. Colo. Aug. 29, 2023) (R. & R.) (state courts, state judicial districts, official-capacity claims against state-court judges (collecting cases)), *adopted by* 2024 WL 810024 (D. Colo. Feb. 27, 2024); *Richeson v. Weiser*, No. 22-cv-

01370-NYW-MEH, 2022 WL 6953270, at *2, *4 (D. Colo. Oct. 12, 2022) (official-capacity claims against state attorney general); *Hicks v. City & County of Denver*, No. 22-cv-01136-CNS-JPO, 2024 WL 3797403, at *3 (D. Colo. July 18, 2024) (official-capacity claims against Colorado district attorneys (collecting cases)).

Eleventh Amendment immunity does not extend, however, to state officials sued in their official capacity where the plaintiff seeks only prospective relief based on federal law. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). For this exception to apply, though, the defendant officer must have "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. The connection need not be any "special connection" to the challenged statute, but the state officer must "have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Edmondson*, 594 F.3d at 760 (internal quotation marks omitted). There is a "common thread" between this analysis and Article III standing analysis, as standing requires that there be a connection between the plaintiff's injury and the responsibilities of the state official such that relief against that official would provide redress. *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)); *accord Bishop v. Oklahoma*, 333 F. App'x 361, 364 n.5 (10th Cir. 2009).

## II. Analysis

### A. Protection-Order Statutes and Emotional-Distress Stalking Statute (Counts I and II)

#### 1. Criminal Statutes

Primary enforcement of Colorado's criminal code lies with the State's district attorneys, like Mr. Walsh. *Sgaggio v. Weiser*, No. 22-cv-01791-PAB, 2022 WL 3700723, at *3 (D. Colo. Aug. 26, 2022) (citing *People ex rel. Tooley v. Dist. Ct.*, 549 P.2d 774 (1976) (interpreting Colo. Rev. Stat. § 24-31-101)). And with the exception of Mr. Walsh, none of the defendants here has a particular duty to enforce Colorado's criminal statutes and a demonstrated willingness to exercise that duty.

The Colorado Attorney General is not authorized to prosecute criminal actions in the absence of a command from the governor or the State's general assembly. *Id.* (citing *Tooley*, 549 P.2d at 776). Mr. Weiser's "general duty to enforce the law" is not a sufficient connection to the State's criminal statutes to fall within *Ex parte Young* exception to Eleventh Amendment immunity. *Id.* at *4 (citing *Hendrickson v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 965 (10th Cir. 2022)). Mr. Weiser is therefore immune from Ms. Drexler's claims challenging Colorado criminal statutes, and his lack of enforcement authority also means that Ms. Drexler lacks standing to assert those claims against him because injunctive and declaratory relief against him would not redress her alleged injuries.

The State Court Administrator and state-court judges likewise do not have a particular duty nor a demonstrated willingness to enforce Colorado's criminal statutes. The State Court Administrator "is appointed by the justices of the supreme court," and "is responsible to the supreme court." Colo. Rev. Stat. § 13-3-101. It is an administrative position. The *Ex parte Young* exception generally does not apply to state-court judges

- 19 -

or administrators because "those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between the parties." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). "As *Ex parte Young* put it, 'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'"[5] *Id.* The State Court Administrator and state-court judges are therefore immune from Ms. Drexler's claims challenging Colorado criminal statutes.[6] And as to standing, because they do not participate as adversaries in disputes filed in the courts, no "case or controversy" exists between them and a litigant who attacks the constitutionality of a statute. *Id.* at 39-40.

The District Attorney does not assert Eleventh Amendment immunity from Ms. Drexler's claims challenging Colorado criminal statutes. *See* Doc. 134 at 9 n.3 (acknowledging DA "regularly prosecutes state criminal misdemeanor and felony cases"). But he does assert, correctly, that Ms. Drexler lacks standing to bring those challenges because she has not demonstrated a credible fear of enforcement, as discussed below.

---

[5]  Ms. Drexler argues that she may obtain declaratory relief against state-court judges, citing *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008). But the court in *Lawrence* was discussing an exception to judicial immunity. *See id.* at 765-66. And "[j]udicial immunity applies only to personal capacity claims." *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 796 (10th Cir. 2013) (quoting *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011)). As noted above, Ms. Drexler brings only official-capacity claims against the defendants.

[6]  The Presiding Judge of Denver County Court and the Presiding Judge of Denver County Courtroom 159, however, do not assert Eleventh Amendment immunity as a basis to dismiss Ms. Drexler's claims against them. *See* Doc. 138.

### a. Colo. Rev. Stat. § 18-6-803.5(1)(a)[7]

"A person commits the crime of violation of a protection order if . . . the person . . . [c]ontacts, harasses, injures, intimidates, molests, threatens, or touches the protected person . . . identified in the protection order . . . *and such conduct is prohibited by the protection order* . . . ." Colo. Rev. Stat. § 18-6-803.5(1)(a) (emphasis added). Ms. Drexler cannot establish a credible fear of enforcement of Section 18-6-803.5 because the protected First Amendment conduct she wishes to engage in is not prohibited by the protection order. As the Tenth Circuit noted, the terms of the protection order should not be conflated with the state courts' alleged reasons for issuing it (*i.e.*, protected speech or petitioning, according to Ms. Drexler). Doc. 50 at 5. "[A] court must consider the effect of the protection order based on its terms," and given the state court's clarification that "'[n]othing in the [protection order] . . . prohibits Ms. Drexler from publishing written materials' or 'otherwise intrudes[s] on her protected First Amendment [activities],'" the order cannot conceivably be characterized as a restriction on Ms. Drexler's First Amendment conduct. *Id.* Because the First Amendment conduct Ms. Drexler wishes to engage in is not arguably prohibited by the protection order, such conduct does not arguably violate the criminal statute, and Ms. Drexler cannot demonstrate a credible fear of enforcement of the statute. *See Griswold*, 2023 WL 5426581, at *1 to *2. Ms. Drexler therefore lacks standing to challenge Section 18-6-803.5(1)(a).

---

[7]   Ms. Drexler asserts this claim against Mr. Weiser, Mr. Walsh, the State Court Administrator, the Presiding Judge of Denver County Court, the Presiding Judge of Denver County Courtroom 159, and John Doe. Doc. 118 at 45.

### b.   Colo. Rev. Stat. § 18-3-602(1)(c)[8]

"A person commits stalking if directly, or indirectly through another person, the person knowingly . . . [r]epeatedly . . . contacts . . . or makes any form of communication with another person . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." Colo. Rev. Stat. § Section 18-3-602(1)(c). Ms. Drexler has also not established a credible fear of enforcement of this statute.

Ms. Drexler contends that the First Amendment conduct she wishes to engage in is arguably prohibited by this statute because, in issuing and extending the protection order, the state courts interpreted her literary works and petitioning of the courts as attempts to "contact" or maintain access to Ms. Brown. *See, e.g.*, Doc. 118 ¶¶ 8, 76(a), 77, 79, 99, 182. Ms. Drexler also contends that the state courts' issuance and extension of the protection order constitutes past enforcement against that protected conduct.[9] *See* Doc. 151 at 5-8. I will assume for purposes of analysis that continuing to write and perform literary works about Ms. Brown and maintain lawsuits against her might "arguably" be construed as "contacting" Ms. Brown in a manner that would cause her to suffer serious emotional distress, though Section 18-3-602 does not on

---

[8]   Ms. Drexler expressly asserts this claim only against Mr. Weiser, Mr. Walsh, and John Doe. Doc. 118 at 48. In her briefs, however, she indicates that she also intends to assert this claim against the State Court Administrator, Doc. 153 at 10 n.3, as well as the Presiding Judge of Denver County Court and the Presiding Judge of Denver County Courtroom 159, Doc. 152 at 2.

[9]   I note that to the extent this does constitute past enforcement against protected conduct, such enforcement was not carried out by the District Attorney, nor was it carried out under Section 18-3-602. *See In re Takata*, 396 F. Supp. 3d at 1126 (standing is claim and defendant specific).

its face expressly proscribe such conduct. Even so assuming, the other *Peck* factors do not support a finding that Ms. Drexler faces a credible fear of enforcement of the statute based on such activities.

Authority to initiate charges under Section 18-3-602 is limited to the District Attorney, as discussed above. The statute does not provide for private enforcement. And the District Attorney has expressly disavowed enforcement of the statute on the basis of Ms. Drexler's engagement in protected First Amendment conduct. The District Attorney states that:

> 5. No law enforcement agency, or anyone else including Ms. Brown or her children as protected parties, has asked my Office to investigate or prosecute Ms. Drexler for any alleged violation of a protection order, stalking, or any other crime.

> 6. My Office has not and is not investigating Ms. Drexler for any alleged violation of a protection order, stalking, or any other crime.

> 7. Neither I nor my Office prosecutes anyone for what is determined to be an exercise of constitutionally protected rights under the First Amendment to the United States Constitution or Colo. Const. Art. II, § 10. I believe engaging in such a prosecution would violate my responsibility to uphold the United States Constitution and the Colorado Constitution. All the attorneys working in my Office take oaths to uphold the United States and Colorado Constitutions as do I.

> 8. I have no intent to prosecute Ms. Drexler for any activity she engages in that is protected by the First Amendment to the United States Constitution or Colorado Const. Art. II, § 10.

> 9. If Ms. Drexler simply published a written work or read from a written work at a location where Ms. Brown and the other protected parties were not present, those actions standing alone would not constitute a protection order violation or stalking in violation of Colorado law in my view. My Office would not prosecute Ms. Drexler solely for those actions. Any investigation or prosecution of Ms. Drexler by my Office would require additional facts related to actions by Ms. Drexler violative of the rights of

others and constituting criminal conduct under Colorado law. My Office would not choose to investigate or prosecute Ms. Drexler unless she engages in conduct beyond the exercise of her right to free speech as protected by the United States and Colorado Constitutions.

10. I believe the distinctions drawn in paragraphs 9 and 10 of this Declaration is consistent with the prior court orders related to the protection order issued limiting Ms. Drexler's conduct as none of the prior court orders indicated Ms. Drexler would violate them solely by exercising her right to free speech as protected by the United States and Colorado Constitutions.

Doc. 134-1 at 2-3; *see also* Doc. 164 at 8 ("District Attorney McCann **can and does** disavow any prosecution for the acts of Plaintiff publishing and performing the literary works Plaintiff has described, which is conduct protected by the First Amendment, and which is also all that is at issue here.").[10]

In light of these representations by the District Attorney, Ms. Drexler has not demonstrated a credible threat of enforcement of Section 18-3-602. Ms. Drexler argues that the District Attorney's disavowals are incomplete because Ms. McCann's declaration focuses on Ms. Drexler's writings and protected speech and does not expressly mention petitioning the courts. *See* Doc. 151 at 13-17. But the declaration states broadly that "Neither I nor my Office prosecutes anyone for what is determined to be an exercise of constitutionally protected rights under the First Amendment"; "I have no intent to prosecute Ms. Drexler for any activity she engages in that is protected by the First Amendment";

---

[10]  Though these disavowals were submitted by Ms. McCann before Mr. Walsh succeeded her as District Attorney, there is no indication in the record that Mr. Walsh interprets Section 18-3-602 or Ms. Drexler's protected First Amendment rights any differently. The only filing Mr. Walsh has made in this case is a notice of his automatic substitution for Ms. McCann. *See* Doc. 194.

- 24 -

and "I believe engaging in such a prosecution would violate my responsibility to uphold the United States Constitution." Doc. 134-1 at 2. Given the District Attorney's acknowledgement that prosecuting Ms. Drexler for stalking based solely on protected First Amendment activity—whether speech or petitioning the courts—would violate the District Attorney's oath of office, it is not reasonable to fear such a prosecution. The District Attorney need not forswear any and all future enforcement of the stalking statute. "It is not necessary for defendants to refute and eliminate all possible risk that the statute might be enforced to demonstrate a lack of a case or controversy." *Mink*, 482 F.3d at 1255 (cleaned up); *cf. Winsness*, 433 F.3d at 732-34; *Bella Health & Wellness v. Weiser*, 699 F. Supp. 3d 1189, 1204-06 (D. Colo. 2023).

Because Ms. Drexler has not demonstrated a credible fear of enforcement of Section 18-3-602, she lacks standing to challenge that statute.

### 2. Civil Protection-Order Statutes, Colo. Rev. Stat. § 13-14-101 *et seq.*[11]

The civil protection-order statutes permit state-court judges to issue protection orders upon the filing of a motion or complaint by a private litigant. *See, e.g.*, Colo. Rev. Stat §§ 13-14-104.5(3)-(4), 13-14-106. None of the defendants has a particular duty to enforce these statutes and a demonstrated willingness to exercise that duty. The statutes are not enforced by any executive official at all; rather, they are applied by the courts when one private citizen seeks relief against another (*e.g.*, issuance of a protection order or modification or termination of an existing protection order). When enforcement authority lies with private

---

[11]  Ms. Drexler asserts this claim against Mr. Weiser, Mr. Walsh, the State Court Administrator, the Presiding Judge of Denver County Court, the Presiding Judge of Denver County Courtroom 159, and John Doe. Doc. 118 at 45.

individuals, the *Ex parte Young* exception does not apply to executive officials like the Attorney General or the District Attorney, even if those officials have some general duty to enforce the law. *See Free Speech Coalition, Inc. v. Anderson*, 119 F.4th 732, 739-40 (10th Cir. 2024) (citing *Hendrickson*, 53 F.4th at 960, 966). Nor does it apply to state-court judges or administrators who work to resolve disputes between litigants.[12] *Whole Woman's Health*, 595 U.S. at 39. The defendants Ms. Drexler has named do not possess enforcement authority that this Court might enjoin them from exercising with respect to the issuance, modification, or termination of civil protection orders. Ms. Drexler's challenges to the civil protection-order statutes are therefore barred due to lack of standing and Eleventh Amendment immunity.

### B. Attorney-Fees Statute, Colo. Rev. Stat. § 13-17-102[13] (Count III)

Ms. Drexler's challenge to the attorney-fees statute, which permits state courts to award reasonable attorney fees in any civil action, *see* Colo. Rev. Stat. § 13-17-102, fails for the same reason as her challenge to the civil protection-order statutes. Like those statutes, the attorney-fees statute is applied by the courts in the context of a civil action

---

[12] Ms. Drexler argues that the State Court Administrator has a sufficient enforcement connection because the Administrator publishes the form used to issue protection orders. Doc. 153 at 10-11; *see also* Colo. Rev. Stat. §§ 13-14-104.5(2), 13-1-136, 13-14-105.5(5)(d). But that administrative duty does not imbue the State Court Administrator with authority to issue a protection order, decide the grounds upon which one may issue, or otherwise assist in giving effect to the civil protection-order statutes.

[13] Ms. Drexler asserts this claim against Mr. Weiser, the State Court Administrator, the Presiding Judge of Denver County Court, the Presiding Judge of Denver County Courtroom 159, the Chief Judge of the Denver District Court, the Presiding Judge in Denver District Court Division 414, and John Doe. Doc. 118 at 51.

between private litigants. Ms. Drexler has not identified any defendant that has a connection to enforcement of the attorney-fees statute sufficient to demonstrate the necessary elements of Article III standing or to overcome Eleventh Amendment immunity.

### C. Appeal Statutes and Rule
   **Colo. Rev. Stat. §§ 13-4-102(1)(f), 13-6-310(4),[14] and Colo. Rev. Stat. § 13-6-311(4) & Colo. R. Cnty. Ct. P. 411[15] (Counts IV and V)**

Ms. Drexler's challenges to the appellate-jurisdiction statutes and the statute and court rule governing appellate briefs fail due to lack of standing and Eleventh Amendment immunity for largely the same reasons as her challenges to the civil protection-order statutes and the attorney-fees statute. The challenged statutes and rule similarly are applied by the courts in the context of a civil action between private litigants, and none of the named defendants has a sufficient connection to their enforcement. Ms. Drexler's challenges additionally fail to the extent she asserts that any defendant violated the Colorado constitution or the appellate-jurisdiction statutes themselves in dismissing her appeals for lack of jurisdiction, as the *Ex parte Young* exception does not apply to asserted violations of state, rather than federal, law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). And, to the extent Ms. Drexler brings her challenge to the court rule against any of the state-court judges in their "administrative" rather than "judicial" capacities, *i.e.*, pursuant to their authority to promulgate court rules as

---

[14]  Ms. Drexler asserts this claim against Mr. Weiser, the Chief Judge and Presiding Judicial Officials in the Colorado Court of Appeals, the Chief Justice of the Colorado Supreme Court, and John Doe. Doc. 118 at 54.

[15]  Ms. Drexler asserts this claim against Mr. Weiser, the Chief Justice of the Colorado Supreme Court, the Chief Judge of the Denver District Court, and John Doe. Doc. 118 at 56.

opposed to applying them, those judges are legislatively immune. *See Collins v. Daniels*, 916 F.3d 1302, 1315-18 (10th Cir. 2019).

### D.  Claims Against John Doe

Ms. Drexler's complaint purports to bring each of her claims in the alternative against "John Doe, in his official capacity with some connection to enforcement of the statutes." Ms. Drexler has had ample time to attempt to identify the proper defendants, as well as multiple opportunities to amend her complaint. At this juncture, her claims against John Doe will be dismissed. *See Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012) (affirming dismissal of John Doe defendants where plaintiff had failed to identify them after more than a year into the case); *Silva v. US Bank, Nat'l Assoc.*, 294 F. Supp. 3d 1117, 1134-35 (D. Colo. 2018) (R. & R.) (recommending dismissal without prejudice of Doe defendants where all claims against named defendants were dismissed), *adopted by* No. 17-cv-1529-WJM-KLM, 2018 WL 10561514 (D. Colo. Mar. 19, 2018).

### CONCLUSION

It is **ORDERED** that:

Defendant District Attorney's Motion to Dismiss Plaintiff's Consolidated Complaint, **Doc. 134**, is **GRANTED**, and the plaintiff's claims against Mr. Walsh are **DISMISSED WITHOUT PREJUDICE**;

The Attorney General's and State Court Administrator's Motion to Dismiss the Consolidated Complaint, **Doc. 135**, is **GRANTED**, and the plaintiff's claims against Mr. Weiser and the State Court Administrator are **DISMISSED WITHOUT PREJUDICE**;

The State Court Judges' Motion to Dismiss Counts III, IV, and V of the Consolidated Complaint, **Doc. 136**, is **GRANTED**, and the plaintiff's claims against the Presiding Judge in Denver District Court Division 414, the Chief Judge of the Denver District Court, the Chief Judge

and Presiding Judicial Officials in the Colorado Court of Appeals, and the Chief Justice of the Colorado Supreme Court are **DISMISSED WITHOUT PREJUDICE**;

The County Judges' Motion to Dismiss Plaintiff's Consolidated Complaint, **Doc. 138**, is **GRANTED**, and the plaintiff's claims against the Presiding Judge of the Denver County Court and the Presiding Judge in Denver County Court Courtroom 159 are **DISMISSED WITHOUT PREJUDICE**;

Plaintiff's Motion for Leave to File a Combined Surreply to Defendants' Replies in Support of Motions to Dismiss, **Doc. 166**, is **DENIED**, though I have considered the plaintiff's arguments in the motion as, in effect, a surreply, *see also* Doc. 173;

The plaintiff's claims against John Doe are **DISMISSED WITHOUT PREJUDICE**;

The plaintiff's Motion to Require Merits Briefing by Defendant State Court Administrator, **Doc. 180**, is **DENIED AS MOOT**;

Pursuant to Doc. 194 and Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to substitute John Walsh, in his official capacity as elected District Attorney for the 2nd Judicial District, in place of Defendant Beth McCann; and

The Clerk of Court is **DIRECTED** to enter final judgment and close this case.

DATED: March 31, 2025                    BY THE COURT:

Daniel D. Domenico
United States District Judge